JaSHORTESS, Judge.
The Commissioner of Insurance for the State of Louisiana, James H. “Jim” Brown (plaintiff), as Liquidator of Pelican State Mutual Insurance Company (Pelican), filed suit against Eva M. Odom (defendant), a member of Pelican’s board of directors, to recover payments arising out of certain subordinated surplus debentures of Pelican.[1] Defendant filed multitudinous exceptions, which were *486 initially heard and overruled by Judge Paul B. Landry, Jr., sitting pro tempore by appointment of the Louisiana Supreme Court. The parties filed cross motions for summary judgment and a motion to reconsider their exceptions, but before they were heard, the parties agreed to have the case heard on the merits, with the trial consisting solely of the presentation of stipulated documents, written stipulations, and argument of counsel. The trial court, through District Judge Bob H. Hester, rendered judgment in favor of plaintiff and against Odom for $14,937.26.[2] From this judgment defendant appeals.
Defendant contends the trial court erred (1) in failing to find the appointment of Judge Landry as a pro tempore judge was unconstitutional, (2) in failing to find plaintiff lacked procedural capacity to bring this action because he had no court authorization, (3) in failing to find plaintiffs claims were perempt-ed by Louisiana Revised Statutes 22:745.1 and 745.3, (4) in failing to give defendant a setoff under Revised Statute 22:747, and (5) in finding in plaintiffs favor without first finding Pelican was insolvent or undercapital-ized at the time payments were made.
| .^CONSTITUTIONALITY OF JUDGE LANDRY’S APPOINTMENT
While this case was assigned to Judge Landry, Odom filed an “exception and objection” to the constitutionality of his appointment. The joint motion to set for trial states “all exceptions ... have been disposed of,” but there is no ruling on this issue in the record. Defendant appears to have abandoned this claim at the trial level after Judge Hester took over the case but is re-urging it on appeal.
Defendant’s assignment of error is without merit for three reasons. First, the Louisiana Supreme Court has authority under article Y, section 5(A) of the Louisiana Constitution to assign a sitting or retired judge to any court, and it unquestionably had the authority to appoint Judge Landry in this case. See State ex rel. Guste v. Green, 94-1138 (La.App. 1st Cir. 6/23/95) p. 15, 657 So.2d 610, 622. Second, defendant failed to pursue this complaint in the trial court. A contradictory hearing must be held at the trial court level on a constitutional claim. Williams v. State, 95-0713, p. 6 (La. 1/26/96), 671 So.2d 899. Third, and most important, Judge Landry did not try this case, and thus his authority or jurisdiction has no relevance to the judgment from which defendant appeals.
AUTHORITY OF PLAINTIFF TO FILE SUIT
Defendant contends plaintiff was required to obtain court authorization prior to filing suit. She bases this contention on the absence of an express provision in the Louisiana Insurance Code authorizing plaintiff to bring lawsuits without court approval, together with language in Dardar v. Insurance Guaranty Association, 556 So.2d 272, 274 (La.App. 1st Cir.1990), that certain acts under Revised Statute 22:737 “for the most part” are subject to prior court approval.
LCourt approval is needed, by the liquidator to compromise a doubtful or uncollectible debt or claim,[3] but not to initiate collection of a debt owed to the insurer, by suit or otherwise. The statute provides in pertinent part: “A. Upon the entry of an order directing liquidation, the commissioner of insurance shall immediately proceed to liquidate the property, business and affairs of the insurer. He is hereby authorized to deal with the property and business of the insurer in his name as commissioner of insurance....”
Plaintiff was acting under an order of liquidation which empowered him to deal with Pelican’s business. An insurer’s business includes filing suit to collect monies owed to it. Thus, no court approval was necessary to bring this suit.
WAS THIS SUIT PEREMPTED BY REVISED STATUTE 22:745.1 OR 22:745.3?
Plaintiffs suit is for the return of payments made to debenture holders from *487 1988 through 1992. Plaintiffs cause of action is based on the obligation found in the Louisiana Civil Code to restore a payment received which was not due. At the time the payments in question were made, Louisiana Civil Code article 2301 provided:
He who receives what is not due to him, whether he receives it through error or knowingly, obliges himself to restore it to him from whom he has unduly received it.
Former article 2304 defined a “thing not due” as “that which is paid on the supposition of an obligation which did not exist, or from which a person has been released.”[4]
Defendant contends plaintiff is limited to actions under Revised Statutes 22:745.1 and 22:745.3. Revised Statute |522:745.1 permits the rescission of fraudulent transfers made within one year prior to filing of a successful petition for rehabilitation, while Revised Statute 22:745.3 allows the liquidator to avoid a preferential transfer made within four months or one year before the filing of the liquidation petition, depending on the circumstances. Defendant argues these statutes exclude any other type action plaintiff may have to recover payments improperly made to her.
Plaintiff, however, points to Revised Statute 22:745.3(K)(3), which provides: “Nothing in this Subsection shall prejudice any other claim by the liquidator against any person.” Plaintiff also relies on Revised Statute 22:735(A), which provides in pertinent part: “The commissioner of insurance ... shall be vested by operation of law with the title to all property, contracts, and rights of action of the insurer as of the date of the order directing rehabilitation or liquidation.” (Emphasis added.) The parties stipulated plaintiff succeeded to all rights of Pelican pursuant to that statute.
On the date of the order directing liquidation, Pelican had a right of action against the debenture holders for return of any payments made which were not due. While plaintiff might also have had an action against the debenture holders under Revised Statutes 745.1 or 745.3, Revised Statute 745.3(K)(3) specifically permits other types of claims.
The allegations of the petition are clear that this is a quasi-eontractual action for payment of a thing not due. We find the ten-year prescriptive period for a personal action under Civil Code article 3499 is applicable herein, and, thus, plaintiffs action is neither preempted nor prescribed.
WAS PELICAN UNDERCAPITALIZED WHEN PAYMENTS WERE MADE?
The parties stipulated the debentures in question contained the following provisions:
|6The obligation of PelState to pay the principal hereof and the interest hereon is subject to the following conditions:
1. Any payment pursuant to the terms hereof is subject to prior written approval of the Louisiana Insurance Commissioner.
2. No part of the principal hereof shall be paid or payable on demand, and no installment of principal or interest shall become due and payable unless Pelican State Mutual Insurance Company (Pel-State) shall be left possessed of sufficient assets to meet all of its liabilities and to maintain a full reserve against all its policies and to maintain the minimum Capital and Surplus requirements, all in accordance with the Louisiana Insurance Code.[5]
(Footnote added.)
Defendant contends the trial court erred in failing to make a specific finding that Pelican was insolvent or undercapitalized at the time payments were made to defendant. The trial court found “all sums that were paid out were in violation of ... the language in the debenture itself.” We interpret this as a *488 finding of undercapitalization, i.e., failure to have sufficient assets to make the payments on the debentures and still have enough funds remaining to meet all its debts, maintain a full reserve against all its policies, and maintain the minimum capital and surplus requirements under the insurance code.
Defendant also contends Pelican was solvent, relying on the annual statements Pelican submitted to plaintiff for 1987 through 1991. However, the language of the debentures is clear that more than mere solvency was necessary before payments could be made to debenture holders. Our review of the trial court’s factual finding regarding Pelican’s financial status is -limited to whether the trial court was manifestly erroneous in finding Pelican was undercapitalized at the time of the payments.
|7If the trial court’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990). Consequently, when there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Housley v. Cerise, 579 So.2d 978, 976 (La.1991); Sistler, 558 So.2d at 1112.
The parties stipulated if Michael L. Scruggs, an expert in the field of casualty actuarial science, testified, he would state in his opinion “Pelican had no surplus at or in excess of the statutory minimum capital during any year 1988-1992, inclusive.” The parties attached to the stipulation a copy of Scruggs’ report, which summarized and explained the procedures he utilized and documents he consulted in formulating his opinions and the calculations he utilized in reaching his conclusions. Plaintiff also offered several other actuarial reports.
Defendant offered, in contradiction to this testimony, Pelican’s annual reports “submitted by Pelican to the Commissioner for the years ending 1987-91 inclusive,” as well as the “Agreed Upon Procedures report of De-loitte & Touche dated September 5, 1990[,] with respect to Pelican’s financial examination as of December 31,1989.... ”
These documents and stipulations presented two permissible views of whether Pelican was sufficiently capitalized at the time it made payments to defendant. The trial court’s choice of plaintiffs position, that Pelican was undercapitalized, thus cannot be clearly wrong.
WAS DEFENDANT ENTITLED TO A SETOFF UNDER REVISED STATUTE 22:747?
Defendant’s final assignment of error is that the trial court erred in failing to give her a setoff for the principal amounts of the debentures. She relies on Revised Statute |g22:747, which provides in pertinent part: “In all cases of mutual debts or mutual credits between the insurer and another person, such credits and debts shall be [set off] and the balance only shall be allowed or paid....”
Plaintiff contends defendant is not entitled to a setoff because there is no mutual debt, i.e., because Pelican owes nothing to defendant. Plaintiffs contention is based upon the failure of the suspensive condition contained in the debentures.
As set forth above, the debentures contained a condition that the principal would not be paid unless Pelican was sufficiently capitalized. This condition was not met, and it is impossible now for that condition to be satisfied. Civil Code article 1769 provides a “suspensive condition that is unlawful or impossible makes the obligation null.” Plaintiff is not entitled to a setoff because Pelican owes her no debt; any obligation of Pelican to repay the debentures is null.
CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Defendant, Eva M. Odom, is cast with all costs of this appeal.
AFFIRMED,

. Plaintiff also sued numerous other debenture holders.

. Plaintiffs claims against Patricia A. Miller were submitted on the merits together with those against Odom. Judgment was rendered against Miller and Odom, but Miller did not appeal.

. See La.R.S. 22:737(B).

. The substance of former Civil Code articles 2301 and 2304 is now found in articles 2299 and 2300. Article 2299 provides: "A person who has received a payment or a thing not owed to him is bound to restore it to the person from whom he received it.” Article 2300 provides: "A thing is not owed when it is paid or delivered for the discharge of an obligation that does not exist.”

. The minimum surplus is set forth in Louisiana Revised Statute 22:124.